UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | |
|---|---|
| RONALD E. WOLSKI, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:20-CV-00108-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION AND** |
| ANDREW M. SAUL, ) | **ORDER** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on cross-motions for Summary Judgment. [R. 14–1, R. 16]. The Plaintiff, Ronald E. Wolski, also filed a Reply. [R. 21]. Wolski exhausted his administrative remedies and brought this action under 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act. The Court, having reviewed the record and the parties' motions, affirms the Commissioner's decision.

I.      **Procedural and Factual Background**

On January 25, 2018, Wolski filed an application for DIB benefits, alleging he became disabled in November 2014. [R. 8–1, pp. 19, 204]. His application was initially denied and again on reconsideration, after which he requested a hearing before an Administrative Law Judge (ALJ). *Id.* at 78, 91, 118–19. The ALJ held a hearing on June 26, 2019, and subsequently issued an unfavorable decision on September 17, 2019, finding Wolski was not disabled since November 30, 2014, the alleged onset date. *Id.* at 36–69, 28. The Appeals Council denied his request for review, and the ALJ's decision became the final decision of the Commissioner. *Id.* at 4–6. Wolski then filed his Complaint against the Commissioner in this Court. [R.1].

1

## II.     Standard of Review

This Court's review of the Commissioner's decision is limited to determining whether it is supported by "substantial evidence" and made in accordance with proper legal standards. *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations omitted). "Substantiality must also be based on the record 'as a whole.'" *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980)). However, "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ," the Court must uphold the Commissioner's decision. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). This Court cannot review the case de novo, resolve conflicts of evidence, or decide questions of credibility. *Cutlip*, 25 F.3d at 286; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

To determine disability under the Social Security Act, the ALJ must conduct a five-step analysis. 20 C.F.R. § 404.1520.

1. First, plaintiff must demonstrate that [he] is not currently engaged in "substantial gainful activity" at the time [he] seeks disability benefits.

2. Second, plaintiff must show that [he] suffers from a "severe impairment" to warrant a finding of disability.

3. Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment

  meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.

4. Fourth, if the plaintiff's impairment does not prevent [him] from doing [his] past relevant work, plaintiff is not disabled.

5. For the fifth and final step, even if the plaintiff's impairment does prevent [him] from doing [his] past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). If the ALJ makes a dispositive finding at any point in the five-step analysis, the review terminates. *Id.*; 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof during the first four steps; this burden shifts to the Commissioner at step five to prove the availability of other work in the national economy that the claimant is capable of performing. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The claimant always retains the burden of proving lack of residual functional capacity (RFC).[1] *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

## III. Analysis

  The ALJ followed the five-step evaluation process as required by SSA regulations. [R. 8–1, pp. 21–28]. At step one, the ALJ found Wolski had not engaged in substantial gainful activity from November 30, 2014, through his date last insured of March 31, 2019. *Id.* at 21. At step two, the ALJ found Wolski had several severe impairments: coronary artery disease; peripheral vascular disease; hypertension; obesity; degenerative disc disease in the lumbar spine; and chronic obstructive pulmonary disease. *Id.* At step three, the ALJ determined Wolski, through the last date insured, did not have an impairment or combination of impairments that met or medically equaled in severity one of the listed impairments. *Id.* at 22. At step four, the ALJ

---

[1] An individual's residual functional capacity is the most an individual can still do despite his or her impairment-related limitations. 20 C.F.R. § 416.945 (a)(1).

3

determined Wolski's RFC assessment, finding that he could perform "light work"[2] with the following limitations:

> [H]e could frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; he could occasionally climb ladders, ropes, and scaffolds; and he must avoid concentrated exposure to temperature extremes, pulmonary irritants, and humidity.

*Id.*

Based on this RFC and the testimony of a vocational expert (VE), the ALJ determined that Wolski could perform past relevant work as a gate guard. *Id.* at 27. Thus, the ALJ found Wolski was "not disabled." *Id.* at 28.

On appeal, Wolski makes two arguments: First, the ALJ erred when she found that Wolski could perform his "past relevant work" as a light-duty "Gate Guard" when the job, as performed by Wolski, actually consisted of medium or heavy work. [R. 14–1, pp. 7–9; R. 21, pp. 3–4]. Second, and in the alternative, the ALJ erred when she did not find that Wolski's "Gate Guard" job was a "composite job," resulting in the ALJ not accurately describing Wolski's past relevant work to the VE. [R. 14–1, pp. 8–9; R. 21, pp. 6–7]. The Court will address each argument in turn.

### a. Past Relevant Work: Gate Guard

Through step four, the claimant bears the burden of proving "the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work …" *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Past relevant work is work that a claimant has performed within the past fifteen years, that was

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [one] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If a claimant can perform past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3).

At step four, the ALJ determined that Wolski was capable of performing his past relevant work as a gate guard because that "work did not require the performance of work-related activities precluded by the claimant's [RFC]." [R. 8–1, p. 27]. This was based on the VE's testimony, which reflected that Wolski could perform his past work as generally performed. *Id.* at 27–28, 66. Wolski now argues the ALJ's finding is not supported by substantial evidence because his testimony establishes that the job he performed required functional abilities in excess of the RFC and in excess of the gate guard job as defined by the Dictionary of Occupational Titles (DOT). [R. 14–1, p. 8]. The Court finds this argument unconvincing. The ALJ specifically found that Wolski could perform his past job as a gate guard as it is *generally* performed. [R. 8–1, p. 28]. The Social Security Regulations address this issue explicitly:

> A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job *but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."*

SSR 82-61, 1982 LEXIS 31, at *4 (emphasis added); *accord Yaden v. Saul*, No. 18-153-DLB, 2019 U.S. Dist. LEXIS 143413, at *25–26 (E.D. Ky. Aug. 23, 2019) (where the court determined it was "legally irrelevant whether the Plaintiff could perform his particular past work" because the ALJ found that the Plaintiff "could perform his past relevant work as it is *generally* performed.").

The ALJ's determination that Wolski can perform his past work as a gate guard is supported by substantial evidence, as the VE testified that Wolski's past work as a gate guard had "the exertional level light." [R. 8–1, p. 65]. In addition, the VE stated that the past work of a gate guard, "as generally performed in the labor market," would be "suitable" for a hypothetical person with Wolski's RFC. *Id.* at 66. The ALJ relied upon this testimony, and thus, the ALJ's determination is without error. *Id.* at 27–28; *see also Norman v. Colvin*, No. 1:14-cv-2374, 2016 U.S. Dist. LEXIS 31681, at *12–13 (N.D. Ohio Jan. 4, 2016) ("The VE's testimony constitutes substantial evidence to support the ALJ's Step Four determination that [claimant] can perform her past relevant work as it is generally performed."); *Ebersole v. Saul*, Civil Action No. 0:18-CV-106-CHB, 2020 U.S. Dist. LEXIS 46896, at *11–12 (E.D. Ky. Mar. 18, 2020) (where the court concluded that the ALJ's decision that the claimant was not disabled was supported by substantial evidence because the vocational expert testified that the claimant was capable of performing her past work as generally performed).

The Court is also unconvinced by Wolski's argument that his past work for Menard's should have been labeled as a "shipping and receiving clerk,"[3] a "medium" job

---

[3] The DOT defines "shipping and receiving clerk" as follows: "verifies and keeps records on incoming and outgoing shipments and prepares items for shipment: Compares identifying information and counts, weighs, or measures items of incoming and outgoing shipments to verify information against bills of lading, invoices, orders, or other records. Determines method of shipment, utilizing knowledge of shipping procedures, routes, and rates. Affixes shipping labels on packed cartons or stencils identifying shipping information on cartons, using stenciling equipment. Assembles wooden or cardboard containers or selects preassembled containers. Inserts items into containers, using spacers, fillers, and protective padding. Nails covers on wooden crates and binds containers with metal tape, using strapping machine. Stamps, stencils, or glues identifying information and shipping instructions onto crates or containers. Posts weights and shipping charges, and affixes postage. Unpacks and examines incoming shipments, rejects damaged items, records shortages, and corresponds with shipper to rectify damages and shortages. Routes items to departments. Examines outgoing shipments to ensure shipments meet specifications. Maintains inventory of shipping materials and supplies. May operate tier-lift truck or use handtruck to move, convey, or hoist shipments from shipping-and-receiving platform to storage or work area. May direct others in preparing outgoing and receiving incoming shipments. May perform only shipping or receiving activities and be known as Shipping Clerk (clerical) or Receiving Clerk (clerical). May be designated according to specialty as Freight Clerk (clerical); Reshipping Clerk

in the DOT, instead of gate guard. [R. 14–1, p. 6]. The DOT defines "gate guard" as follows:

> Guards entrance gate of industrial plant and grounds, warehouse, or other property to control traffic to and from buildings and grounds: Opens gate to allow entrance or exit of employees, truckers, and authorized visitors. Checks credentials or approved roster before admitting anyone. Issues passes at own discretion or on instructions from superiors. Directs visitors and truckers to various parts of grounds or buildings. Inspects outgoing traffic to prevent unauthorized removal of company property or products. May record number of trucks or other carriers entering and leaving. May perform maintenance duties, such as mowing lawns and sweeping gate areas. May require permits from employees for tools or materials taken from premises. May supervise use of time clocks for recording arrival and departure of employees [TIMEKEEPER (clerical) 215.362-022]. May answer telephone and transfer calls when switchboard is closed. When stationed at entrance to restricted area, such as explosives shed or research laboratory, may be designated Controlled-Area Checker (any industry).

372.667-030 Gate Guard, DICOT 372.667-030.

During the administrative hearing, Wolski described his duties as a gate guard as requiring the following tasks:

> Well, what I did is, is the – the people would go back into that section of the yard and they would pick up the raw materials and then what my – what my job was is as they came out, well, I'd have to check them in to make sure there wasn't anything in their vehicle when they went in and as they come out I had to check the vehicles to make sure that they weren't taking more than what they were supposed to and, you know, basically check the counts and everything they were taking out of the yard.

[R. 8–1, p. 43]. Wolski also testified as to having to lift occasional bundles of shingles, weighing about "75, 85 pounds," and walking about seven hours of his eight-hour shift. *Id.* at 43–44. However, despite the additional physical exertions the job required from Wolski, it is evident that Wolski's duties at Menard's supports an occupational characterization of

---

(clerical). May receive damaged or defective goods returned to establishment and be designated Returned-Goods Receiving Clerk (clerical). May receive unsold products returned by DRIVER, SALES ROUTE (retail trade; wholesale tr.) 292.353-010 and be designated Route Returner (clerical)." 222.387-050 Shipping and Receiving Clerk, DICOT 222.387-050.

7

gate guard. Wolski checked in vehicles, directed visitors and truckers, and inspected vehicles at entry and exit points for unauthorized materials. *Id.* at 43. Furthermore, Wolski described his job at Menard's as a "gate guard" position and did not object at the hearing when the ALJ labeled the position as such. *Id.* at 39, 235. Thus, the characterization of Wolski's past work as a gate guard is supported by substantial evidence. Consequently, the ALJ did not err when she relied on such characterization in determining Wolski was not disabled.

### b. Composite Job

Composite jobs have significant elements of two or more occupations and as such, have no counterpart in the DOT. SSR 82-61, 1982 SSR LEXIS 31. Such situations must be evaluated according to the particular facts of each individual case and may require the services of a vocational expert. *Id.* Here, Wolski argues that because his job as a gate guard was a "composite job," the ALJ could not determine that he was capable of his past relevant work. [R. 14–1, p. 8–9]. In support of his argument, Wolski cites to *Burgess v. Soc. Sec. Admin.*, No. 3:15-CV-00701, 2016 WL 5800467 (M.D. Tenn. Sept. 30, 2016), *Tipton v. Comm'r of Soc. Sec.*, No. 2:14-cv-1209, 2015 U.S. Dist. LEXIS 71847 (S.D. Ohio June 3, 2015), and *Walters v. Berryhill*, No. 5:17-cv-00470-EBA, 2018 U.S. Dist. LEXIS 111879 (E.D. Ky. July 5, 2018). [R. 21, pp. 6–7]. However, the Court finds the cases distinguishable.

In *Burgess*, the ALJ determined that the claimant could perform her past relevant work as a "scheduling clerk." 2016 WL 5800467, at *1. However, the court concluded this finding was not supported by substantial evidence for two reasons: First, the claimant's testimony clearly illustrated that her prior job was a composite job. *Id.* at 8.

Second, because the claimant's job was a composite job, the VE erred when he classified claimant's past work as a "scheduling clerk" under the DOT.[4] Consequently, the case was remanded back to the Commissioner. *Id.*

In *Tipton*, the court concluded that it was incorrect for the ALJ to characterize the claimant's past relevant work "as consisting only of radiology clerk" when the claimant "performed two different jobs in the typical manner each is normally performed." 2015 U.S. Dist. LEXIS 71847, at *20–21. In support of its conclusion, the court mentioned that the VE acknowledged that the claimant's additional duties were the likely the result of "the fact that she worked in a smaller hospital where such jobs were necessarily combined." *Id.* at 20.

Lastly, in *Walters*, the court found the ALJ's decision to be unsupported by substantial evidence because it failed to consider that "[i]n addition to Plaintiff's duties as a sewing machine operator, Plaintiff also lifted 50-pound bundles of fabric and carried the bundles to her workstation, which are the duties of a bundle boy." 2018 U.S. Dist. LEXIS 111879, at * 17. The court's conclusion was supported by VE testimony, which stated that the claimant's past work was composite job. *Id.* at 18.

In this case, neither the VE testimony nor Wolski's testimony provides evidence to suggest that Wolski's past relevant work as a gate guard constituted a composite job. While acknowledging that the position may have been performed at a "medium to heavy" level, the VE labeled Wolski's past work as a "Gate Guard, DOT Number 372.667-030. The exertional level light …" [R. 8–1, p. 65]. It was then determined that an individual

---

[4] "A composite job does not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'" DI 25005.020 Past Relevant Work (PRW) as the Claimant Performed It, SSA POMS DI 25005.020.

with Wolski's RFC could perform this job as generally required by the labor market. *Id.* at 66. The mere fact that Wolski performed his past job as a gate guard at a heavier exertional level than set forth in the DOT does not render the job a composite job. *See Walters*, 2018 U.S. Dist. LEXIS 111879, at *16 (where the court concluded that the present case was "distinguishable from the scenario found in SSR 82-61, 1982 SSR LEXIS 31 because Plaintiff was not merely performing her job … at a higher exertional level than what was described in the DOT," but performing her job duties as both a sewing machine operator and a bundle boy).

Furthermore, a second job or additional duties were never discussed or even asserted by Wolski at the administrative hearing. Wolski's attorney failed to object to the VE's characterization of "gate guard" and failed to raise the "composite job" matter to the VE on cross-examination. Consequently, Wolski is precluded from asserting it now as grounds of relief. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (finding the plaintiff could not complain about the substance of the vocational expert's testimony when counsel failed to cross examine the expert on the matter during the administrative hearing); *Stevens v. Comm'r of Soc. Sec.*, Case. No. 2:14-cv-2186, 2016 U.S. Dist. LEXIS 21067, *38 (S.D. Ohio March 24, 2016) (holding that where the Plaintiff's attorney did not "question or object to the VE's characterization of Plaintiff's past work … Plaintiff may not now complain because the ALJ relied upon the VE's description of Plaintiff's past work.").

**IV. Conclusion**

Based on the Court's review of the ALJ's decision, the Court finds that it is supported by substantial evidence and was made in accordance with proper legal

standards. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); 42 U.S.C. § 405(g). Therefore, the Court will grant the Commissioner's Motion for Summary Judgment.

Accordingly, for the reasons stated above,

**IT IS ORDERED** as follows:

1. The Plaintiff's Motion for Summary Judgment **[R. 14–1]** is **DENIED**.

2. The Commissioner's Motion for Summary Judgment **[R. 16]** is **GRANTED**.

3. The decision of the Commissioner is **AFFIRMED**.

4. A judgment will be entered contemporaneously with this Order.

This the 1st day of November, 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY